UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BRIAN KEITH SMITH,

        Petitioner,

v.                                                                    Case No. 3:22-cv-647-MMH-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Brian Keith Smith, an inmate of the Florida penal system, initiated this action on June 7, 2022,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, Smith challenges a 2012 state court (Duval County, Florida) judgment of conviction for armed robbery. He raises eight grounds for relief. See id. at 6–21.[2] Respondents submitted a memorandum in opposition to the Petition. See Response to Petition for Writ of Habeas Corpus (Response; Doc. 5). They also submitted exhibits. See Docs. 5-1 through 5-23. Smith did not file a brief in

_____

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

reply, and briefing closed on July 19, 2023. <u>See</u> Order (Doc. 7). This action is ripe for review.

## II. Relevant Procedural History

On June 29, 2011, the State of Florida charged Smith by amended information with one count of armed robbery at Atlantic Coast Bank. Doc. 5-1 at 41; <u>see also</u> <u>id.</u> at 20. Smith proceeded to a trial, and on December 15, 2011, a jury found Smith guilty of the single offense charged. <u>Id.</u> at 104. On March 7, 2012, the trial court sentenced Smith to life in prison. <u>Id.</u> at 137–42.

On direct appeal, with the benefit of counsel, Smith filed an initial brief arguing the trial court erred when it: (1) permitted the prosecutor to cross-examine Smith about his presence in the courtroom; (2) overruled Smith's objection to Robin Fraley identifying him in photographs from Atlantic Coast Bank when she was not present and not an eyewitness to the robbery; and (3) failed to instruct the jury on an alibi defense. Doc. 5-3 at 2–48. The State filed an answer brief, Doc. 5-4 at 2–30, and Smith replied, Doc. 5-5 at 2–12. The First District Court of Appeal (First DCA) per curiam affirmed Smith's conviction and sentence without a written opinion on August 12, 2013, Doc. 5-6 at 4, and issued the mandate on August 28, 2013, <u>id.</u> at 3.

2

On August 10, 2014, Smith filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Doc. 5-7 at 2–49. Smith subsequently retained postconviction counsel and filed an amended Rule 3.850 Motion, in which he alleged counsel was ineffective for failing to: investigate and present witnesses to support Smith's alibi (ground one); request a jury instruction on an alibi defense (ground two); and request independent DNA testing (ground three). Doc. 5-8 at 2–16. He also raised a claim of cumulative error (ground four). Id. at 16–17. The postconviction court conducted an evidentiary hearing, after which it denied relief on all grounds. Doc. 5-10 at 2–7. On February 11, 2022, the First DCA per curiam affirmed the denial of relief without a written opinion, Doc. 5-13 at 3–4, and on March 11, 2022, it issued the mandate, id. at 2.

On November 29, 2016, through counsel, Smith filed a motion for DNA testing pursuant to Florida Rule of Criminal Procedure 3.853. Doc. 5-14 at 2–25. The State responded. Doc. 5-15 at 14–26. The postconviction court denied relief, adopting the State's response. Id. at 2–4. The First DCA per curiam affirmed the denial of relief without a written opinion on June 20, 2018, Doc. 5-18 at 3–4, and on July 11, 2018, it issued the mandate, id. at 2.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318–19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Smith's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

4

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), abrogation recognized on other grounds by Smith v. Comm'r, Ala. Dep't of Corr., 67 F.4th 1335, 1348 (11th Cir. 2023). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "greatly circumscribed and highly deferential." Id. (internal quotation marks omitted) (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's

adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 584 U.S. 122, 125 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 125–26, 132.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97–98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As

6

explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." <u>See</u> <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); <u>accord</u> <u>Brumfield v. Cain</u>, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" <u>Titlow</u>, 571 U.S. at ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>,

558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Titlow, 571 U.S. at 19. "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102–03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state

court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365–366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

9

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[3] supra, at 747–748, 111 S. Ct. 2546; Sykes,[4] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and

---

[3] Coleman v. Thompson, 501 U.S. 722 (1991).
[4] Wainwright v. Sykes, 433 U.S. 72 (1977).

10

> prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9–10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id</u>. at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the

---

[5] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

11

continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

12

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (first citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); and then Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant

13

> of a fair trial, a trial whose result is reliable." Id., at
> 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of

any iron-clad rule requiring a court to tackle one prong of the Strickland test

before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part

Strickland test must be satisfied to show a Sixth Amendment violation, "a

court need not address the performance prong if the petitioner cannot meet

the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d

1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose

of an ineffectiveness claim on the ground of lack of sufficient prejudice, which

we expect will often be so, that course should be followed." Strickland, 466

U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great

deference.

> "[T]he standard for judging counsel's representation
> is a most deferential one." Richter, 562 U.S. at ---,
> 131 S. Ct. at 788. But "[e]stablishing that a state
> court's application of Strickland was unreasonable
> under § 2254(d) is all the more difficult. The
> standards created by Strickland and § 2254(d) are
> both highly deferential, and when the two apply in
> tandem, review is doubly so." Id. (citations and
> quotation marks omitted). "The question is not
> whether a federal court believes the state court's
> determination under the Strickland standard was

14

incorrect but whether that determination was unreasonable — a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at ---, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference—this one to a state court's decision—when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

In Ground One, Smith argues that the trial court erred when it allowed the prosecutor to cross-examine him about his presence in the courtroom. See Petition at 6. According to Smith, the prosecutor "improperly suggest[ed] to

[the] jury that [Smith's] testimony was less credible" because "he was able to change [and] choreograph his testimony." Id.

The record reflects that the following exchange occurred when the prosecutor cross-examined Smith at trial:

> Q     Okay, Mr. Smith, you said you have two felony convictions, right?
>
> A     Yes, ma'am.
>
> Q     You've got more at stake in this trial than anybody else, isn't that right?
>
> A     Yes, ma'am.
>
> Q     And you got to sit here and you got to listen to every single witness that took the stand before you took the stand, isn't that right?
>
> A     Yes, ma'am.
>
> Q     And you had access –
>
> [Defense Counsel]: Judge, I'm going to object. He has a right to be here for his trial.
>
> The Court: He does, but I'll overrule the objection, though, she can ask the question.
>
> . . . .
>
> Q     You had access to the police reports, right?

A    Yes, ma'am.

Q    And you've had access to those for about seven months, correct?

A    Yes, ma'am.

Q    Okay. You've had access to the depositions of [Atlantic Coast Bank] Vice President Colleen Mulligan, correct?

A    Yes, ma'am.

Q    And the bank tellers, correct?

A    Yes, ma'am.

Q    Your neighbor, correct?

A    Yes, ma'am.

Q    The officers that testified, correct?

A    Yes, ma'am.

Q    Video interview of you, correct?

A    Yes, ma'am.

Q    Your wife's interviews, correct?

A    Yes, ma'am.

Q    And you've had seven months to think about what it is you're going to say here today, correct?

A    Yes, ma'am.

17

Doc. 5-2 at 259–60. Smith raised this claim on direct appeal, Doc. 5-3 at 26–
35; the State filed an answer brief, Doc. 5-4 at 11–15; and the First DCA per
curiam affirmed Smith's conviction and sentence without a written opinion,
Doc. 5-6 at 4.

If the appellate court addressed the merits of this claim, the state
court's adjudication is entitled to deference under AEDPA. After a review of
the record and the applicable law, the Court concludes that the state court's
adjudication of this claim was not contrary to clearly established federal law,
did not involve an unreasonable application of clearly established federal law,
and was not based on an unreasonable determination of the facts in light of
the evidence presented in the state court proceedings. Therefore, Smith is not
entitled to relief on the basis of this claim.

Assuming arguendo the appellate court's adjudication of this claim is
not entitled to deference, the claim is still without merit. When a defendant
testifies in his own defense, his credibility may be impeached and his
testimony assailed like any other witness. Portuondo v. Agard, 529 U.S. 61,
69 (2000). A prosecutor's comments or questions calling the jury's attention to
the fact that a defendant had the opportunity to hear other witnesses testify
and to tailor his testimony, does not unlawfully burden a defendant's right to

be present at trial, to be confronted with witnesses, or to testify on his own behalf, nor does it violate his right to due process. Id. Here, the prosecutor's line of questioning about Smith's presence in the courtroom attempted to challenge Smith's credibility as a witness. It did not violate his right to due process or to testify on his own behalf. Therefore, Smith is not entitled to federal habeas relief on the claim in Ground One.

## B. Ground Two

Next, Smith argues the trial court erred when it overruled counsel's objection to a witness, Robin Fraley, identifying Smith in photographs from Atlantic Coast Bank even though she did not witness the robbery. See Petition at 9. The record reflects that the State called Fraley, Smith's across-the-street neighbor, to testify at trial. Doc. 5-2 at 158. When the prosecutor asked Fraley whether she had an opportunity to view photographs from the robbery, counsel requested a sidebar conference. Id. at 160. The following exchange occurred:

> [Defense Counsel]: Your Honor, we're – we're objecting to the State seeking to – basically it's a second identification, a show of photos to someone who has no knowledge of the robbery, have h[er] identify Mr. Smith as the person that was involved in the robbery by someone who has absolutely no idea of what happened there. It's commenting on the evidence, there's no personal knowledge, it's

19

bolstering an identification with a witness that isn't a witness at all.

The Court: Okay. I don't know what her testimony is.

[The State]: Yes, Your Honor. Basically, she's been deposed, she's been listed as a witness and they know everything that she's going to say. They know that she identified him in the photos. The detective met with her and she said, yes, that's my neighbor, that's the one. She identifies the shirt that he's wearing, it's one she's seen him wear before. She will also say that he decided to change his appearance around the time of the robbery, his goatee that he wears. It's consistent with the photo so there are – we feel that it's relevant. We're not trying to say she's a witness to the crime but she does help with identification with detectives to the crime.

[Defense Counsel]: And we're not objecting to the hair cut or the shirt or anything like that. We're objecting to utilizing a non-witness to pose as a witness that he was the robber in this case when she had – she has any idea.

The Court: She can't testify to that, obviously. All she can testify –

[The State]: To the fact that she saw the same photo that was put on the news release and that when she saw it she believed that to be this defendant.

The Court: All right. I'm going to overrule the objection.

20

Id. at 161–62. The prosecutor then showed Fraley photographs from the robbery at Atlantic Coast Bank on April 22, 2011, and she identified the individual in them as her neighbor, Smith. Id. at 162–64.

This trial court error claim is unexhausted because Smith did not present the federal nature of this claim to the state court. On direct appeal, Smith argued that the trial court erred under Florida law when it allowed Fraley to identify Smith in the photographs. See Doc. 5-3 at 36–42. The State filed an answer brief, Doc. 5-4 at 16–20, and the First DCA per curiam affirmed Smith's conviction and sentence without a written opinion, Doc. 5-6 at 4. When briefing this issue, however, Smith did not state or suggest that he was raising a claim about a federal constitutional guarantee. Therefore, insofar as Smith now raises a federal claim, the Court finds he failed to fairly present the claim to the state court, which deprived the state court of a meaningful opportunity to review the claim. Since future attempts to exhaust the claim would be futile, it is procedurally defaulted. Smith has alleged neither cause and prejudice nor a miscarriage of justice to overcome his failure to exhaust. Accordingly, the claim in Ground Two is procedurally barred.

Nevertheless, even if Smith properly exhausted this claim, he is still not entitled to relief. If the appellate court addressed the merits of this claim, the state court's adjudication is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Even assuming arguendo the trial court erroneously admitted Fraley's identification testimony, Smith is still not entitled to federal habeas relief. "[A] federal constitutional error is harmless [on federal habeas review] unless there is 'actual prejudice,' meaning that the error had a 'substantial and injurious effect or influence' on the jury's verdict." Mansfield v. Sec'y, Dep't of Corr., 679 F.3d 1301, 1307 (11th Cir. 2012) (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)). Accordingly, "the erroneous admission of evidence is likely to be harmless . . . where there is significant corroborating evidence or where other evidence of guilt is overwhelming." Id. at 1313 (citations omitted). Here, three bank employee eyewitnesses identified Smith as the perpetrator. Colleen Mulligan, the bank manager, identified Smith in the

22

courtroom, photographs of the robbery, and a photospread. Doc. 5-2 at 30, 48–50, 52. Notably, the bank manager greeted Smith and escorted him into her office where they had a discussion for approximately five minutes. Id. at 32–33. According to the bank manager, Smith was behaving suspiciously, so she paid attention to his features. Id. at 34.

Two tellers, Eileen McKay and Elizabeth Leighton, identified Smith in the courtroom and a photospread. Id. at 73, 85–86, 96, 106–07. McKay saw Smith's eyes when he adjusted his sunglasses. Id. at 78–79. And Leighton wrote down Smith's description when he entered the bank because he was behaving suspiciously. Id. at 98–99. In short, three reliable eyewitnesses identified Smith as the perpetrator. Given their testimony, Fraley's identification was cumulative and did not significantly contribute to Smith's conviction. Therefore, Smith is not entitled to federal habeas relief on the basis of the claim in Ground Two.

## C. Ground Three

As Ground Three, Smith alleges the trial court committed fundamental error when it failed to instruct the jury on his alibi defense.[6] See Petition at 11. The claim in Ground Three is unexhausted because Smith did not present the federal nature of it to the state court. On direct appeal, Smith argued that the trial court's refusal to instruct the jury on his alibi defense constituted fundamental error under Florida law. See Doc. 5-3 at 43–47. The State filed an answer brief, Doc. 5-4 at 21–28, and the First DCA per curiam affirmed Smith's conviction and sentence without a written opinion, Doc. 5-6 at 4. "[T]he fundamental error question is an issue of state law, and state law is what the state courts say it is." Pinkney v. Sec'y, Dept. of Corr., 876 F.3d 1290, 1296 (11th Cir. 2017). And Smith did not present any federal constitutional grounds in support of this claim on direct appeal.

---

[6] Florida's alibi jury instruction states:

> An issue in this case is whether defendant was present when the crime allegedly was committed.

> If you have a reasonable doubt that the defendant was present at the scene of the alleged crime, it is your duty to find the defendant not guilty.

Fla. Std. Jury Instr. (Crim.) 3.6(i).

24

Therefore, to the extent Smith now raises a federal claim, the Court finds he failed to fairly present the claim to the state court, which deprived the state court of a meaningful opportunity to review the claim. Because future attempts to exhaust the claim would be futile, the claim is procedurally defaulted. Smith has alleged neither cause and prejudice nor a miscarriage of justice to overcome his failure to exhaust. As such, the claim is procedurally barred.

Nevertheless, even if Smith properly exhausted this claim, he is still not entitled to relief. If the appellate court addressed the merits of this claim, the state court's adjudication is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

"State court jury instructions ordinarily comprise issues of state law and are not subject to federal habeas corpus review absent fundamental unfairness." Jones v. Kemp, 794 F.2d 1536, 1540 (11th Cir. 1986). On federal habeas review, to establish fundamental unfairness, the petitioner must

demonstrate "the error 'so infected the entire trial that the resulting conviction violates due process.'" Jacobs v. Singletary, 952 F.2d 1282, 1290 (11th Cir. 1992) (quoting Henderson v. Kibbe, 431 U.S. 145, 154 (1977)). Moreover, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Kibbe, 431 U.S. at 155.

Here, while the trial court did not instruct the jury on Smith's alibi defense because counsel never requested the specific instruction, the trial court's charge correctly stated the law and encompassed Smith's defense. The jury was properly instructed as to the elements of armed robbery, the burden of proof in a criminal case, and the evaluation of evidence. Doc. 5-1 at 111–12, 116–17. Specifically, the trial court instructed the jury that "the State has the burden of proving the crime with which the defendant is charged was committed and the defendant is the person who committed the crime." Id. at 116 (emphasis added). And the jury was instructed that they should find Smith not guilty of the crime charged if the State had not proved the case beyond a reasonable doubt. Id.

Review of the record also reveals that Smith presented an alibi defense at trial. During opening statements and closing arguments, the defense argued that Smith was misidentified as the perpetrator because he was home

26

with his wife and children at the time of the bank robbery. Doc. 5-2 at 26–28, 471–93. Both Smith and his wife testified that he could not have committed the robbery because, after Smith picked his wife up at Bed, Bath and Beyond around 3:30 p.m., they drove to the beach to pick up the children and returned home. Id. at 192–95, 247–51.

Based on the trial court's instructions, the jury knew that it should find Smith not guilty if there was any reasonable doubt he was the person who committed the robbery. And Smith had the opportunity to present evidence in support of his alibi; however, the jury rejected his defense. As such, the failure to specifically instruct on Smith's alibi defense did not render his trial fundamentally unfair. Therefore, he is not entitled to federal habeas relief on the basis of the claim in Ground Three.

### D. Ground Four

As Ground Four, Smith merely alleges "Motion for DNA Testing." Petition at 13. He further asserts that he "met all requirements and should've been approved." Id. The record shows that Smith through counsel filed a Rule 3.853 motion for DNA testing. Doc. 5-14 at 2–25. In the Rule 3.853 motion, he sought additional, more advanced DNA testing of swabs from the crime scene that previous testing failed to produce a DNA profile. See generally id. The

27

State responded. Doc. 5-15 at 14–26. The postconviction court adopted the State's response and denied relief. Id. at 2–4.

Pursuant to Rule 3.853, a movant can file a motion for postconviction DNA testing. Fla. R. Crim. P. 3.853(a). "If the movant is successful, those procedures culminate only in 'the results of the DNA testing ordered by the court [being] provided in writing to the court, the movant, and the prosecuting authority.'" Brown v. Sec'y for Dep't of Corr., 530 F.3d 1335, 1337 (11th Cir. 2008) (citing Fla. R. Crim. P. 3.853 and § 925.11(2)(i), Fla. Stat.). As such, "a Rule 3.853 proceeding involves an application for discovery only, pursuant to which the court lacks authority to order relief from the movant's sentence or conviction based on the DNA test results." Id. Because DNA testing would not change the fact or duration of Smith's detention, he is not entitled to federal habeas relief. See Skinner v. Switzer, 562 U.S. 521, 534 (2011). Moreover, any defect in the Rule 3.853 proceeding would not provide a basis for federal habeas relief. See Carroll v. Sec'y, Dep't of Corr., 574 F.3d 1354, 1365 (11th Cir. 2009) ("This Court has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief.").

To the extent Smith argues that the postconviction court erred when it denied his Rule 3.853 Motion, this claim is not cognizable in a federal habeas

28

petition because it is a matter of state law. <u>See</u> <u>Swarthout v. Cooke</u>, 562 U.S. 216, 219 (2011) (holding errors of state law are not cognizable in federal habeas review). The Court also notes that there is no substantive due process right to postconviction access to DNA evidence, <u>see</u> <u>Dist. Att'y's Off. for Third Jud. Dist. v. Osborne</u>, 557 U.S. 52, 72 (2009), and Smith has not asserted any federal constitutional violation in Ground Four. Therefore, his request for DNA testing rests solely on state law and is not cognizable in a federal habeas petition. Based on the above, relief on the claim in Ground Four is due to be denied.

### E. Ground Five

In Ground Five, Smith contends counsel was ineffective when he failed to investigate and present witnesses at trial. <u>See</u> Petition at 14. According to Smith, counsel knew about "several witnesses at the beach the day the robbery occurred" but counsel never interviewed these witnesses. <u>Id.</u>

Smith raised a substantially similar claim in his amended Rule 3.850 motion. Doc. 5-8 at 6–11. Following an evidentiary hearing, the postconviction court denied relief, stating in pertinent part:

> Defendant and his wife testified at trial, and both gave similar timelines regarding the day of the robbery. Defendant picked his wife up after work at

29

approximately 3:30 p.m. They drove to the beach to pick up their children at approximately 4:00 p.m. They returned home sometime around 4:15 p.m. to 4:30 p.m. On cross-examination, the State argued Defendant was biased because he did not want to go [to] jail and his wife was biased because she loved her husband and did not want their children to lose their father. The State reiterated these arguments during closing.

Because Defendant alleged non-biased witnesses should have been investigated and called in order to support his defense, this Court held an evidentiary hearing to resolve Ground One. Defendant only produced one witness—Susan McLaroy. She had an incomplete memory of the day in question: she remembered Defendant coming over, and she remembered him leaving to pick up his wife, but she had no memory of when Defendant returned or left. Based upon her testimony, there is no reasonable probability the ultimate outcome of Defendant's trial would have been different had counsel called her as a witness.

Defendant also testified, and he claimed that he had given counsel names and information critical to an alibi defense. Counsel gave conflicting testimony and had no notes or recollection of Defendant providing him with a way to contact any additional witnesses. Had information been provided, counsel would have investigated it. This Court finds counsel's testimony more credible on this point.

Doc. 5-10 at 3–4 (record citations omitted). The First DCA per curiam affirmed the postconviction court's order without a written opinion. Doc. 5-13 at 3–4. For purposes of analysis, the Court will assume that Smith

30

sufficiently exhausted the claim in state court and that the claim is properly before this Court.[7]

To the extent that the First DCA decided this claim on the merits,[8] the Court applies the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Smith is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Smiths ineffectiveness claim is without merit because the record supports the postconviction court's findings. The postconviction court made a factual determination when it chose to credit the testimony of Smith's trial counsel. See Consalvo v. Sec'y for Dep't of Corr.,

---

[7] See Response at 33 (arguing Smith raised a similar, but not the same, claim in his amended Rule 3.850 motion).

[8] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 584 U.S. at 125.

664 F.3d 842, 845 (11th Cir. 2011) ("We consider questions about the credibility and demeanor of a witness to be questions of fact."). Therefore, the Court must presume the finding is correct unless Smith can rebut the presumption with clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

Here, Smith has not rebutted the postconviction court's credibility finding by clear and convincing evidence. The postconviction court credited counsel's testimony that: (1) he had no notes or recollection of Smith providing him with any information about additional witnesses, and (2) if Smith had provided him with this information, counsel would have investigated it. The postconviction court's factual finding refutes the claim regarding counsel's alleged deficiency in failing to investigate and call witnesses. Given the postconviction court's credibility determination, Smith's claim is wholly unsupported, and therefore fails. Accordingly, Smith is not entitled to federal habeas relief as to the claim in Ground Five.

### F. Ground Six

Next, Smith asserts that counsel was ineffective when he failed to request a jury instruction on Smith's alibi defense. See Petition at 17. Smith raised a substantially similar claim in his amended Rule 3.850 motion. Doc.

5-8 at 11–13. Following an evidentiary hearing, the postconviction court denied relief, stating:

> At the evidentiary hearing, counsel could not recall why he did not request an alibi instruction when he had argued alibi to the jury. Relying upon several cases, Defendant argues this establishes that counsel was ineffective. However, this Court finds all of the cases distinguishable.
>
> The first line of cases involves direct appeals where a trial court refused to give an alibi instruction when sufficient evidence of alibi had been presented at trial. E.g., Watson v. State, 200 So. 2d 270 (Fla. 2d DCA 1967); Hudson v. State, 381 So. 2d 344 (1980); Davis v. State, 254 So. 2d 221 (1971). In the instant case, no one disputes that Defendant would have been entitled to an alibi instruction had counsel requested one, so these cases have little bearing on the matter at hand.
>
> The second line of cases involves postconviction claims where counsel either failed to object to the given instructions or failed to request an instruction. E.g., Platt v. State, 697 So. 2d 989 (Fla. 4th DCA 1997); Cabrera v. State, 766 So. 2d 1131 (Fla. 3d DCA 2000). However, the instructions in these cases either established the basis for a defense or would have provided an alternative avenue for acquittal. Platt, 697 So. 2d at 991; Cabrera, 766 So. 2d at 1134.
>
> The standard alibi jury instruction provides as follows: "An issue in this case is whether defendant was present when the crime allegedly was committed. If you have a reasonable doubt that the defendant was present at the scene of the alleged

> crime, it is your duty to find the defendant not
> guilty." Fla. Std. Jury Instr. (Crim.) 3.6(i). The State
> presented evidence that Defendant walked into a
> bank and committed a robbery, and Defendant
> presented evidence that he had been at home at the
> time. By finding Defendant guilty, the jury
> necessarily found that Defendant was present at the
> scene of the crime. Accordingly, Defendant cannot
> demonstrate he was prejudiced by counsel's failure to
> request the instruction, so he is not entitled to relief
> on Ground Two.

Doc. 5-10 at 4–5. The First DCA per curiam affirmed the postconviction

court's order without a written opinion. Doc. 5-13 at 3–4.

To the extent that the First DCA decided this claim on the merits, the

Court applies the deferential standard for federal court review of state court

adjudications. After a review of the record and the applicable law, the Court

concludes that the state court's adjudication of this claim was not contrary to

clearly established federal law, did not involve an unreasonable application of

clearly established federal law, and was not based on an unreasonable

determination of the facts in light of the evidence presented in the state court

proceedings. Therefore, Smith is not entitled to relief on the basis of this

claim.

Assuming arguendo the state court's adjudication of this claim is not

entitled to deference, Smith's ineffectiveness claim is still without merit. As

34

the Court observed in Ground Three, supra, the trial court properly instructed the jury on the elements of the crime charged, the burden of proof, and the evaluation of evidence. Moreover, at trial, Smith and his wife testified that he was at home with his family when the robbery occurred. In contrast, the State presented the testimony of three eyewitnesses who identified Smith as the perpetrator.

Given the instructions and evidence presented, the jury was aware that if it found the defense witnesses credible, it should acquit Smith of the offense charged. The jury clearly rejected Smith's alibi defense and instead credited the testimony of the State witnesses. As such, Smith has not shown a reasonable probability exists that the outcome of the case would have been different if counsel had requested a specific alibi instruction. Accordingly, relief on the claim in Ground Six is due to be denied.

### G. Ground Seven

As Ground Seven, Smith alleges counsel was ineffective when he failed "to conduct DNA testing." Petition at 19. He argues that counsel should have sought independent DNA testing of swabs from the crime scene after tests by the Florida Department of Law Enforcement crime lab did not produce a DNA profile. Id.; see also Doc. 5-8 at 14–16.

35

Smith raised a substantially similar claim in his amended Rule 3.850 motion. Doc. 5-8 at 14–16. The postconviction court denied relief, stating in pertinent part:

> Any claim that additional DNA testing **would** have exonerated Defendant is speculative. <u>Bertonatti v. State</u>, 251 So. 3d 237, 243 (Fla. 3d DCA 2018). Defendant previously moved to have this evidence tested pursuant to Florida Rule of Criminal Procedure 3.853. This Court denied his motion on the merits, and the First District Court of Appeal affirmed. Accordingly, Defendant is not entitled to relief on Ground Three.

Doc. 5-10 at 6 (emphasis in original) (record citations omitted). The First DCA per curiam affirmed the postconviction court's order without a written opinion. Doc. 5-13 at 3–4.

To the extent that the First DCA decided this claim on the merits, the Court applies the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court

36

proceedings. Therefore, Smith is not entitled to relief on the basis of this claim.

Assuming arguendo the state court's adjudication of this claim is not entitled to deference, Smith's ineffectiveness claim is still without merit because his allegations are facially insufficient to support a claim of ineffective assistance of counsel. Vague, conclusory, speculative, or unsupported claims cannot establish an ineffective assistance of counsel claim. Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991). More than mere conceivability is required to establish prejudice; indeed, the likelihood of a different result must be substantial, not just conceivable. Jenkins v. Comm., Ala. Dep't of Corr., 963 F.3d 1248, 1264 (11th Cir. 2020). The Court finds this claim is conclusory and speculative because Smith merely alleges, without support, that independent DNA testing would produce exculpatory results. As such, it does not entitle Smith to federal habeas relief. Therefore, the Court will deny relief as to Ground Seven.

## H. Ground Eight

Last, in Ground Eight, Smith argues that the cumulative impact of counsel's errors prejudiced him at trial. See Petition at 21. Where all individual claims are meritless, the claim of cumulative error is also without

37

merit. See Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). Because each of Smith's individual claims lack merit, his claim of cumulative error fails. Accordingly, relief on the claim in Ground Eight is due to be denied.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Smith seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Smith "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or

wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now **ORDERED:**

1.    The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Smith appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of June, 2025.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 6/11
c:      Brian Keith Smith, #124505
        Counsel of record

40